IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NESTOR LONDONO § | | |
| § | | |
| Plaintiff, § | | |
| § | CIVIL ACTION NO. _____ | |
| vs. § | | |
| § | JURY REQUESTED | |
| HOUSTON INDEPENDENT SCHOOL § | | |
| DISTRICT § | | |
| § | | |
| Defendants § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, NESTOR LONDONO, Plaintiff herein, and files this his Original Complaint and in support thereof would show the Court as follows:

**I.
NATURE OF THE ACTION**

1. This is an action is filed under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act to seek relief and correct unlawful employment practices by HOUSTON INDEPENDENT SCHOOL DISTRICT (hereinafter "HISD") including sex and sexual orientation discrimination and retaliation upon NESTOR LONDONO.

**II.
PARTIES, VENUE AND JURISDICTION**

2. NESTOR LONDONO is an individual residing in Houston, Harris County, Texas. The cause of action complained of herein arose at Defendant's place of business in Houston, Harris County, Texas.

3. Defendant, Houston Independent School District (hereinafter "HISD" or "Defendant") is a political subdivision of the State of Texas. It is an independent school district within the State of Texas, organized pursuant to state law, and charged with the responsibilities of operating and maintaining a public school system within its geographical boundaries. It may be served through its Interim Superintendent, Mike Miles, Houston Independent School District, 4400 West 18th street, Houston, Texas 77092.

4. Venue is proper in the Southern District of Texas pursuant 28 U.S.C. § 1391(a) because this is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as NESTOR LONDONO's cause of action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC §§ 2000e-2-5. Jurisdiction is invoked for any state law claims pursuant to the doctrine of pendent jurisdiction, 28 U.S.C. § 1367.

## III.
## PROCEDURAL REQUIREMENTS

6. On September 4, 2024, the U.S. Equal Employment Opportunity Commission ("EEOC") issued to NESTOR LONDONO a Notice of Right to Sue HISD in the United States District Court. A copy of the Notice of Right to Sue is attached as Exhibit A, Plaintiff has filed suit within 90 days of his receipt of the Notice of Right to Sue.

## IV.
## BACKGROUND

7. Mr. Londono was initially hired by HISD in August 22, 2002 as a Classroom teacher. Mr. Londono self-identifies as a homosexual man.

8. Subsequently, in 2008, Mr. Londono became the Technology teacher. In this role he was responsible for implementing, troubleshooting, and installing all new technologies. Mr. Londono was highly responsible, demonstrated an excellent work ethic, and exceeded all expectations in his work performance.

9. HISD was very impressed with Mr. Londono which is why Mr. Londono was promoted in 2012 as Dean of Instruction for Lyons Elementary School of HISD. Once again, in this role, Mr. Londono excelled in all aspects of his duties. During his employment with HISD, Mr. Londono received over 19 yearly positive evaluations and absolutely no written warnings, disciplinary actions, or even verbal admonitions.

10. Mr. Londono was highly liked by all his colleagues, as well as parents and community members. In fact, for the over twenty years that Mr. Londono had been a part of the HISD community, Mr. Londono had attended countless weddings, baptisms, funerals, hospital visits, and all kinds of celebrations and hardships with and for the people of his wonderful community. Mr. Londono believed in service to those he loved, and HISD, namely Lyons Elementary, had become the community that he loved. Mr. Londono was committed to serving his community for many years to come.

11. Things took a turn for the worse, however, when Olivia Casares (hereinafter "Ms. Casares") was hired at Lyons elementary school as a teacher and then became principal of the school in 2018. Ms. Casares became Mr. Londono's direct supervisor. From the initiation of her promotion, Ms. Casares was extremely unpleasant, unprofessional, and unapproachable to Mr. Londono and made inappropriate and openly biased comments against the LGBTQ community to Mr. Londono and other faculty.

12. Prior to Ms. Casares' promotion as Lyon elementary school's principal, the elementary school was a Blue-Ribbon school, recognized for its overall academic excellence and progress in closing the achievement gaps among student subgroups. Under Ms. Casares' leadership, the school lost its title and became a low rated school by T.E.A (Texas Education Agency) standards.

13. Immediately upon becoming principal, Ms. Casares sought different ways to demean and belittle Mr. Londono on a regular basis due to his sexual orientation. Ms. Casares would constantly undermine Mr. London's authority as Dean of instruction by dismissing his discretion and deciding authority regarding the course curriculum, in a manner she would not dismiss other employees that did not identify as being in the LGTBQ community and reported to her. Ms. Casares would also dismiss Mr. Londono's input on any school-related matters during meetings and conversations.

14. Ms. Casares also overloaded Mr. Londono with work that was not under his job description. For instance, when a clerk at the school retired, Ms. Casares assigned all of her previous duties to Mr. Londono's list of obligations. Ms. Casares required Mr. Londono to be responsible for all files that the retired clerk personally handled, in addition to his original duties of campus test coordinator. She did not require employees outside Mr. Londono's protected class that reported to her to take on this additional uncompensated workload.

15. Ms. Casares created a hostile work environment for Ms. Londono, not only by multiplying Mr. Londono job duties, but also by repeatedly making highly offensive comments that were biased and prejudiced against Mr. Londono's sexuality and personal lifestyle, demonstrating her actions were motivated by discrimination against his sexual orientation. Mr. Londono self-identified as a homosexual man openly during his employment.

16. Additionally, Ms. Casares would make discriminatory comments referring to Mr. Londono's sexuality, by stating that "Mr. Londono is different, you know," or "Mr. Londono is disgusting." Ms. Casares made comments such as these directly in front of Mr. Londono's colleagues, further embarrassing and humiliating him in front of school personnel.

17. Additionally, Ms. Casares would belittle and degrade Mr. Londono by referring to him as a woman, knowing full well that he was clearly a man, and identified as a man. In countless meetings where Mr. Londono was present, Ms. Casares would address the entire audience as all "ladies." Even in circumstances where Mr. Londono was the only man present in a group of men, the only man that was present with two other women, or even while with just one other female colleague, Ms. Casares would not acknowledge him as a man. In all situations, Ms. Casares would refer to the group as all "ladies." Ms. Casares' actions were intentional and severely hurtful to Mr. Londono. In one incident among many, following the Covid-19 pandemic, when all faculty returned to work on-site, Ms. Casares looked directly at Mr. Londono and one other colleague, who was a female, and blatantly directed them to cover up by specifically stating "cover up, ladies."

18. During meetings, Ms. Casares would constantly refer to Mr. Londono in feminine terms in front of other people. Statements like, "do we agree on this, ladies?" "This finishes our meeting, ladies," and "thank you, ladies" were commonly used by Ms. Casares while being fully aware of Ms. Londono's presence. It was clear to Mr. Londono and to the remaining faculty members that Ms. Casares' statements were pervasive and intentional.

19. Ms. Casares' comments were extremely degrading and humiliating to Mr. Londono, so much so that he was unable to tolerate the hate and discrimination showcased by Mr. Londono having to seek medical help with a professional for: anxiety episodes, high blood pressure, and

stress-related migraines Mr. Londono would experience due to Ms. Casares' hate speech and harassment towards him due to his sexual orientation.

20. Ms. Casares was openly homophobic in the workplace. In fact, in addition to treating Mr. Londono horribly due to his sexuality, Ms. Casares displayed similar animosity towards Patty Turner (hereinafter "Ms. Turner"). Ms. Turner was a special education teacher at Lyon's elementary school who was a lesbian. Knowing about Ms. Turner's sexual orientation, Ms. Casares would refer to Ms. Turner in horrendous ways, including stating negative remarks against Ms. Turner and her appearance, like "she looks weird", and "I don't like her [Ms. Turner]" "I want her [Ms. Turner] to leave Lyons," "She [Ms. Turner] is not a good teacher. Ms. Casares would often comment about Ms. Turner's looks and smirk while commenting on Ms. Turner's sexuality. Ms. Casares made the situation very uncomfortable for Ms. Turner. Furthermore, Ms. Casares did not harass and demean employees outside of the LGBTQ community in this manner.

21. Ms. Casares's actions created a workplace that had become intolerable. However, Mr. Londono did not want to leave his community and beloved school due to Ms. Casares' ill treatment. Mr. Londono was part of the HISD community, having spent substantial time with the HISD community, and valued his experience and memories at Lyon's elementary school.

22. Therefore, On May 2, 2023, Mr. Londono filed an ethics complaint against Ms. Casares. In this complaint, Mr. Londono explained that he was being subjected to discrimination due to his sexual orientation by Ms. Casares and pleaded with the ethics department to resolve the matter in an ethical and impartial way, so that he would be able to continue serving his community as before. Mr. Londono specifically asked the ethics department to do a neutral investigation of the matter, which was very much needed at the time.

23. On May 12, 2023, Mr. Londono received a response from the HISD ethics department which acknowledged the receipt of the ethics complaint.

24. On May 16, 2023, Mr. Londono forwarded to Ms. Shenequa Stone, HISD investigator, an email previously sent to Ms. Casares regarding her discrimination against Mr. Londono due to his sexual orientation.

25. On July 19, 2023, Mr. Londono received a closure letter from the ethics department, which informed him that there had allegedly been an investigation conducted that determined that Mr. Londono's claims were unsubstantiated.

26. On August 31, 2023, Mr. Londono emailed Diana Balderas (hereinafter "Ms. Balderas") in the ethics department, seeking an explanation with regard to the alleged investigation and related results.

27. On September 5, 2023, Mr. Londono supplemented his complaint to the ethics department by email, addressing his complaint to Shenequa Butler (hereinafter Ms. Butler") of the ethics department. In this email, Mr. Londono once again inquired regarding the complaint and alleged investigation. This time, Mr. Londono explained that he felt threatened and targeted by Ms. Casares due to his complaint. Mr. Londono proceeded to provide details of an incident with Ms. Casares in which she made Mr. Londono uncomfortable by coming in physical proximity to him and unreasonably making physical contact with him by placing her hand on his shoulder, which made Mr. Londono very uncomfortable.

28. On September 8, 2023, Ms. Casares informed Mr. Londono that the Assistant Superintendent of Elementary schools, Dr. Shana Perry (hereinafter Dr. Perry") would be coming to speak with Ms. Londono. Dr. Perry came to speak to Mr. Londono and abruptly informed him

he had two options: 1) resigning from HISD or 2) accepting another position with HISD at another campus.  Dr. Perry informed Mr. Londono about an opening for a third-grade math teacher at Coop Elementary School. Mr. Londono felt that this entire situation was very unfair and in complete retaliation for his complaint.

29. Mr. Londono felt pressured and that he had no alternative but to proceed with the position at Coop Elementary School, given the only other option he was presented with was resignation. As such, Mr. Londono agreed to interview for the second option. Ultimately, Mr. Londono went to his interview but did not feel at all comfortable moving to Coop Elementary or taking the position in question. Therefore, Mr. Londono declined to move forward with the position. Mr. Londono informed Dr. Perry and Mr. Sabillon of his decision. Dr. Perry called Mr. Londono after hours, at 7 pm the same day, to address his refusal of the Coop Elementary position. Dr. Perry expressed frustration with Mr. Londono for refusing the transfer. Dr. Perry stated that she did not like answering to people who "were asking questions about Mr. Londono's case." Next, Dr. Perry threatened Mr. Londono by stating that she could "move him to any place that she wants." Mr. Londono understood that Ms. Casares and Dr. Perry were conspiring together to find ways to remove Mr. Londono from Lyon's Elementary, a school beloved to him in a community beloved to him as well.

30. At this juncture, Mr. Londono had been treated unfairly, discriminated against due to his sexual orientation, demeaned, harassed, belittled, and now retaliated against. Mr. Londono's mental health was deteriorating due to HISD's unfair treatment of him. Mr. Londono's daily work life consisted of constant fear of losing his job, a job that he loved, appreciated, and cherished for over twenty years. Ultimately, Mr. Londono accepted a demotion to a third-grade teacher at Coop

Elementary, as he was not given the option of remaining working at Lyon's Elementary, solely due to Ms. Casares' discrimination and retaliation.

31. On September 21, 2023, Mr. Londono began his employment at Coop Elementary. Following Mr. Londono's forced transfer to Coop Elementary, the discrimination and retaliation against Mr. Londono continued. On a frequent basis, Mr. Londono was scrutinized at a higher level than the other teachers and harassed about his teaching methods with discriminatory and stereotyping comments from his supervisors telling Mr. Londono he was "too loud."

32. This hostile work environment created by HISD administration resulted in Mr. Londono's mental health and physical health deteriorating. Therefore, on October 11, 2023, Mr. Londono sent an email to Mr. Luis A. Sabillon and Ms. Veronica DeLaCruz about being absent due to his medical condition until October 23, 2023. Mr. Londono also provided medical certification to support his request for days off.

33. Then on November 3, 2023, Mr. Londono was sent a letter regarding excessive absences that referred to the days he had requested off due to his medical condition and provided the necessary medical documentation.

34. On January 2, 2024, Mr. Londono filed an EEOC Charge complaining of the discrimination, and continuing retaliation and harassment he was receiving by his employer, HISD. Following the filing of the EEOC Charge, the retaliation by HISD against Mr. Londono escalated further.

35. On January 19, 2024, a false allegation was made against Mr. Londono where he was accused of calling a student a 'monkey,' and that the student needed to take a shower. Following this fabricated accusation, on January 20, 2024, Mr. Londono made another complaint

to HISD regarding the harassment and discrimination he was receiving from his supervisor and the school administration.

36. HISD then conducted an investigation where ten students were interviewed about Mr. Londono's alleged behavior regarding the monkey and shower comment. HISD's investigation concluded the allegation against Mr. Londono was unable to be confirmed. The lack of evidence to support the false statements against Mr. Londono was confirmed in the Memorandum provided to Mr. Londono on February 5, 2024.

37. On March 5, 2024, Mr. Londono was sent a "Directive to Attend a Conference for the Record" from Mr. Luis Sabillon, the Principal of Coop Elementary. Then on March 8, 2024, at 9:00 a.m. the meeting took place at Coop Elementary with the principal, Mr. Luis Sabillon and Executive Director, Ms. Diana Balderas present. Mr. Sabillon informed Mr. Londono that he was recommending the non-renewal of Mr. Londono's contract allegedly based on excessive absences. Mr. Sabillon also stated that Mr. Londono had failed to provide any documentation to support his absences, which was false, as Mr. Londono had provided medical documentation to support his absences.

38. Then on April 12, 2024, the retaliation against Mr. Londono escalated even further, and he was informed that that Board had elected to terminate his employment with HISD. On April 23, 2024, Mr. Londono then appealed the Board's decision to non-renew his contract. However, the decision was ultimately upheld because, despite being a teacher with HISD for over twenty years, Mr. Londono had, without his knowledge or consent, been placed on a probationary contract when he was forced to transfer to the position at Coop Elementary.

## V.
## **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION: DISPARATE TREATMENT CLAIMS UNDER TILE VII AND TEXAS COMMISSION ON HUMAN RIGHTS (TCHRA)**

39. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge an individual, or otherwise discriminate against any individual on the basis of "race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e-2. TCHRA was modeled after federal civil rights law and is intended to coordinate state law with federal law in employment discrimination cases, the Texas Supreme Court interprets TCHRA in light of federal law and the cases interpreting that law. *In re United Servs. Auto. Ass'n,* 307 S.W.3d 299, 308 (Tex.2010).

40. Pursuant to 42 U.S.C. § 2000e-2 Plaintiff pleads a disparate treatment claim against the Defendant for sex discrimination based on sexual orientation.

41. The allegations contained in all paragraphs of this complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

42. Employee exhausted his available administrative remedies by filing his EEOC charge on January 2, 2024. Plaintiff received his right to sue from the EEOC for his charge on September 4, 2024. See Exhibit A. The claims pursued in this lawsuit are included or related to Plaintiff's claims in his EEOC charge.

43. Plaintiff is a homosexual male and an employee of HISD.

44. Plaintiff was treated differently than other similarly situated employees outside his protected class. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and ultimately resulted in Plaintiff's termination of his position and demotion to an

inferior and probationary position in a different at a different school. As demonstrated in the fact section above, Plaintiff was qualified for his position at Lyons Elementary.

45. Defendant also discriminated against Plaintiff compared to his similarly situated employees outside Mr. Londono's protected class, through the following actions: Plaintiff was given additional work load that was not compensated or given to similarly situated employees, Plaintiff's input to course curriculum and on any school related matter during meetings was dismissed, whereas similarly situated employees were not dismissed in this manner.

46. Finally, Defendant's termination of Plaintiff's position at Lyons Elementary, forceable transfer of Plaintiff into a probationary position at Coop Elementary and Defendant's termination of Plaintiff's position at Coop Elementary are adverse employment actions that materially and adversely affected Plaintiff's overall terms and conditions of his employment in violation of Title VII of the Civil Rights Act of 1964.

47. Defendant's wrongful terminations of Plaintiff are a direct and proximate result of sex discrimination based on sexual orientation and Plaintiff's protected activities.

48. As a result of Defendant's unlawful discrimination and termination of Plaintiff's employment, forced demotion to another probationary position at Coop Elementary, and subsequent termination of Plaintiff's position at Coop Elementary, Plaintiff has suffered and continued to suffer harm, including but not limited to lost earnings, lost benefits, and other severe financial losses, as well as emotional and mental anguish.

49. Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, and other appropriate relief. Attorney's fees should be awarded pursuant to 42 U.S.C. 2000e-5(k).

**SECOND CAUSE OF ACTION:**
**HOSTILE WORK ENVIRONMENT CLAIMS DUE TO SEXUAL ORIENTATION UNDER TITLE VII AND TCHRA**

50. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge an individual, or otherwise discriminate against any individual because of that individual's sex." See 42 U.S.C. § 2000e

51. Pursuant to 42 U.S.C. § 2000e-2 Plaintiff pleads a cause of action against the Defendant for sex discrimination based on sexual orientation.

52. The allegations contained in all paragraphs of this complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

53. Plaintiff is a homosexual male and an employee of HISD.

54. Plaintiff was subjected to derogatory treatment and a hostile work environment claim under Title VII and suffered from unwelcome harassment based on his sexual orientation from his employer, HISD.

55. As stated in the fact section above, starting in 2018, Plaintiff was insulted and demeaned due to his sexual orientation by Ms. Casares, his direct supervisor, on a regular basis.

56. Defendant had knowledge about Ms. Casares' discriminatory comments and creation of a hostile work environment for Plaintiff. On May 2, 2023, Plaintiff made a complaint to Defendant about Ms. Casares' discrimination and creation of a hostile work environment for Plaintiff due to his sexual orientation. Plaintiff also made subsequent complaints to Defendant on May 23, 2023, and September 5, 2023.

57. Throughout the following months, Plaintiff continued to be subjected to incidents of harassment and homophobic insults on a daily basis by Ms. Casares at his workplace.

58. Plaintiff was also treated in a demeaning manner and given less benefits and assistance compared to his coworkers outside his protected class through the following actions: Plaintiff was given additional work load that was not compensated or given to similarly situated employees, Plaintiff's input to course curriculum and on any school related matter during meetings was dismissed, whereas similarly situated employees outside his protected class were not dismissed in this manner.

59. After Plaintiff complained about Ms. Casares's harassment and discrimination to Defendant, Defendant forced Plaintiff to accept a transfer to Coop Elementary as a probationary employee. The hostile work environment against Plaintiff then continued at Coop Elementary.

60. As demonstrated in the fact section above, the harassment against Plaintiff was daily therefore it was sufficiently pervasive to reach the level of a hostile work environment. Furthermore, the harassment from Defendant employees interfered with Plaintiff's performance, and Defendant was made aware of it through Plaintiff's multiple complaints listed in the fact section above.

**THIRD CAUSE OF ACTION:**
**RETALIATION CLAIMS UNDER TITLE VII AND TCHRA**

61. Plaintiff realleges and incorporates all the allegations contained in the preceding paragraphs of this Petition as though fully rewritten herein.

62. Title VII of the Civil Rights Act of 1964 and the TCHRA make it unlawful for an employer to retaliate against an employee because the employee has "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." See 42 U.S.C. § 2000e-3.

63.     49.     Pursuant to 42 U.S.C. § 2000e-3 and the TCHRA Plaintiff pleads a cause of action against the Defendant for retaliation.

64.     Plaintiff has exhausted the federal administrative remedies in this cause by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding the Defendant's alleged discriminatory conduct. The EEOC issued a Notice of Right to Sue letter, which Plaintiff received on September 4, 2022. *See* Exhibit A.

65.     Plaintiff engaged in multiple protected activities, including but not limited to the following; 1) May 2, 2023 Plaintiff reported Ms. Casares's discrimination and harassment due to his sex and sexual orientation to Defendant, 2) on August 31, 2023, Plaintiff emailed his complaint about the discrimination to Ms. Diana Balderas, 3) on September 5, 2023, Plaintiff emailed Defendant's ethics department about his complaint of sex and sexual orientation discrimination against Ms. Casares, 4) on September 8, 2023, Plaintiff made an additional complaint to HISD about the ongoing discrimination and retaliation he was receiving from Ms. Casares following his previous complaints against Ms. Casares's discrimination against him, 5) on November 7, 2023 via legal counsel, Plaintiff again documented complaints regarding sex and sexual orientation discrimination, 6) Plaintiff filed an EEOC Charge on January 2, 2024, and 7) made a complaint to Mr. Sabillon on January 20, 2024.  In conclusion, Plaintiff has met the first element of having engaged in several protected activities.

66.     Due to Plaintiff's protected complaints, Defendant committed the following acts of retaliation: 1) Dr. Perry pressured Plaintiff to accept a transfer to Coop elementary in a probationary position, 2) terminated his employment at Lyons Elementary, 3) subjected Plaintiff to a hostile work environment at Lyons elementary, 4) subjected Plaintiff to a hostile work environment at Coop Elementary, and 5) terminated his employment with Coop Elementary.

67. Additionally, following Plaintiff's complaint on May 3, 2023, and subsequent complaints to the ethics department, Plaintiff received further retaliation from his supervisors and the administration at HISD, both at Lyons Elementary and Coop Elementary as explained in the fact section above.

68. Defendant's adverse actions against Plaintiff are a direct and proximate result of sexual orientation and sex discrimination and his protected activities.

69. As a result of Defendant's adverse actions listed above, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other severe financial losses, as well as emotional and mental anguish.

70. Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII and the TCHRA, including back pay, front pay, compensatory damages, and other appropriate relief. Attorney's fees should be awarded pursuant to 42 U.S.C. 2000e-5(k) and TCHRA.

## VI.
## DAMAGES

71. Plaintiff sustained damages as a result of the actions and/or omissions of Defendant as described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court. Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has suffered, continues to suffer, and will suffer in the future.

72. Additionally, as a result of Defendant's above-referenced actions and/or omissions, Plaintiff was required to retain counsel to protect and enforce his legal rights. Accordingly, Plaintiff also seeks compensation for the attorney's fees, as well as out-of-pocket expenses, expert fees and costs of Court he will have incurred in this action.

## VII.
## JURY DEMAND

73.     Plaintiff demands a jury on all issues to be tried in this matter and herein submits the jury fee.

## VIII.
## PRAYER

For the reasons set forth above, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for:

a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to back pay, reinstatement, upgrading, and compensation for benefits not received;

b. Lost wages in the future;

c. Past physical pain and mental suffering;

d. Present physical pain and mental suffering;

e. Future physical pain and mental suffering;

f. Reasonable attorneys' fees as allowed by law, with conditional awards in the event of appeal;

g. Prejudgment interest at the highest rate permitted by law;

h. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

i. Costs of Court; and

j. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

k. Rehire with promoted position

Respectfully submitted,
TB Robinson Law Group, PLLC

_____
Terrence B. Robinson
Fed. Bar No. 14218
Texas Bar No. 17112900
Email: TRobinson@TBRobinsonlaw.com
Claudia Casas
Fed Bar No. 3573914
Texas Bar No.24110850
Email: CCasas@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that on this 27th of November 2024, the foregoing *Plaintiff's Original Complaint* was electronically filed with the Clerk of Court using the CM/ECF system and served on all attorney(s) and/or parties of record via CM/ECF service.

_____
Terrence B. Robinson